**2017 UT App 80**

# THE UTAH COURT OF APPEALS

STATE OF UTAH, IN THE INTEREST OF D.V. AND A.V.,
PERSONS UNDER EIGHTEEN YEARS OF AGE.

J.V.,
Appellant,
*v.*
STATE OF UTAH,
Appellee.

Per Curiam Opinion
No. 20170194-CA
Filed May 11, 2017

Third District Juvenile Court, Salt Lake Department
The Honorable Charles D. Behrens
No. 1094724

Sheleigh A. Harding, Attorney for Appellant

Sean D. Reyes, Carol L.C. Verdoia, and John M.
Peterson, Attorneys for Appellee

Martha Pierce, Guardian ad Litem

Before JUDGES STEPHEN L. ROTH, KATE A. TOOMEY, and DAVID N.
MORTENSEN.

PER CURIAM:

¶1     J.V. (Father) appeals the termination of his parental rights
to D.V. and A.V. We affirm.

¶2     "Whether a parent's rights should be terminated presents
a mixed question of law and fact." *In re B.R.*, 2007 UT 82, ¶ 12,
171 P.3d 435. "Because of the factually intense nature of such an
inquiry, the juvenile court's decision should be afforded a high
degree of deference." *Id.* "Thus, in order to overturn the juvenile

court's decision '[t]he result must be against the clear weight of the evidence or leave the appellate court with a firm and definite conviction that a mistake has been made.'" *Id.* (alteration in original) (quoting *In re Z.D.*, 2006 UT 54, ¶¶ 33, 40, 147 P.3d 401). Further, "[w]hen a foundation for the court's decision exists in the evidence, an appellate court may not engage in a reweighing of the evidence." *Id.*

¶3 The juvenile court found that several grounds supported termination of Father's parental rights. The juvenile court concluded that Father neglected or abused the children, s*ee* Utah Code Ann. § 78A-6-507(1)(b) (LexisNexis 2012), and was an unfit or incompetent parent, *see id*. § 78A-6-507(1)(c). The court further concluded that the children had been in an out-of-home placement under the supervision of DCFS, *see id*. § 78A-6-507(1)(d)(i); that Father had "substantially neglected, willfully refused, or has been unable or unwilling to remedy the circumstances that caused the child to be in an out-of-home placement," s*ee id.* § 78A-6-507(1)(d)(ii); and that "there is a substantial likelihood that [Father] will not be capable of exercising proper and effective parental care in the near future," *see id.* § 78A-6-507(1)(d)(iii). The juvenile court concluded that the children had suffered or were substantially likely to suffer serious detriment due to parental unfitness, *see id.* § 78A-6-503(7) (Supp. 2016), and that it was strictly necessary to terminate parental rights. After finding grounds for termination, the court concluded it was in the child's best interest that Father's parental rights be terminated. *See id.* § 78A-6-503(12).

¶4 "Utah law requires a court to make two distinct findings before terminating a parent-child relationship." *In re R.A.J.*, 1999 UT App 329, ¶ 7, 991 P.2d 1118. "First, the court must find that the parent is below some minimum threshold of fitness, such as a finding that a parent is unfit or incompetent based on any of the grounds for termination" in section 78A-6-507. *Id.* (citation and internal quotation marks omitted). "Second, the court must

find that the best interests and welfare of the child are served by terminating . . . parental rights." *Id.* Under Utah Code section 78A-6-507, the finding of a single ground will support termination of parental rights. *See* Utah Code Ann. § 78A-6-507(1) (LexisNexis 2012). Father challenges the sufficiency of the evidence to support the grounds for termination and also challenges the best interest determination.

¶5     Father was incarcerated in the Utah State Prison for the entire length of the case, and he does not have a parole hearing date until June of 2019. Father was able to participate in the care of A.V. during the early months of her life, but he had never met D.V. Father testified that he has been incarcerated for most of the last twenty years. The juvenile court made a detailed finding on Father's extensive criminal history. The juvenile court also found that, "[d]ue to the father's felony conviction and ongoing incarceration the children would be deprived of a normal home life. A normal home life would be one where the father would be present to be the father."

¶6     Father argues that the sole basis for the findings of his parental unfitness and parental neglect was his lengthy incarceration. He asserts that the children were not deprived of a normal home for over one year prior to the State's seeking termination and "were only outside of a normal home for a period of 4.5 months." This argument considers the children's placement in a foster home in September 2016 as the disruption of their normal home. Father argues that a parent's incarceration only rises to the level of neglect or unfitness when the children "have been deprived of a normal home for over one year."[1] Utah

---

1. Father also challenges the ground for termination under Utah Code section 78A-6-507(1)(d) on the same basis, although Utah Code section 78A-6-508(2)(e) makes no reference to that separate ground.

Code section 78A-6-508(2), describing evidence to support the grounds for termination, states, in part,

> In determining whether a parent or parents are unfit or have neglected a child the court shall consider, but is not limited to, the following circumstances, conduct, or conditions: . . .
>
> (e) whether the parent is incarcerated as a result of conviction or a felony and the sentence is of such length that the children will be deprived of a normal home for more than one year.

Utah Code Ann. § 78A-6-508(2)(e) (LexisNexis Supp. 2016).

¶7 We first note that the language of this section does not, as Father suggests, require proof that the children were deprived of their normal home for one year before termination is sought. Indeed, the statute is written in the future tense, not the past tense. Father argues that the sole basis for the finding of his parental neglect or unfitness was his extended incarceration. This argument ignores the totality of the juvenile court's findings. The juvenile court found that Father "has spent the last twenty years of his life in and out of prison for drug offenses," that he participated in the care of A.V. for only the first few months and has never met D.V., and that he had an extensive criminal history, as listed in the findings. The court also found that the evidence supported the ground for termination described in section 78A-6-507(1)(d), pertaining to children who are being cared for in an out-of-home placement. Thus, the court's decision rested on more than just the length of Father's prison term.

¶8 Citing a hypothetical situation discussed in footnote three of *In re D.B.*, 2002 UT App 314, 57 P.3d 1102, Father also argues that the juvenile court erred in its finding that a normal home is one in which Father would be present. Father contends there is

no requirement that the incarcerated parent be in the home in order for a "normal home life" to exist. Footnote three states, "Thus, a felon convicted and sent to prison for many years could not have his parental right terminated under subsection (e) if his child is not in DCFS custody, or possibly, even if in DCFS custody, simply went on living in the case of other relatives." *Id.* ¶ 11 n.3. However, this court need not determine whether the juvenile court erred in finding that a normal home is one that includes Father because this case does not present similar facts to those discussed in the footnote.

¶9    Moreover, the father in *In re D.B.* did not dispute that the child was in DCFS custody, that he had been convicted of a felony, "and that due to his incarceration, the daughter would be deprived of a normal home for more than one year." *Id.* ¶ 9. The father argued that "incarceration for a period of more than a year, standing alone, is [insufficient] to justify termination of parental rights." *Id.* ¶ 10 (internal quotation marks omitted). But this court explained that in making this argument, the father misconstrued section 508(2)(e), which actually focuses on whether the child will be "*'deprived of a normal home* for more than one year' as a result of her parent's felony conviction." *Id.* (emphasis in original).

> In other words, when the child of a convicted felon remains in, or will soon return to, her "normal home," despite the parent's incarceration, the fact that the parent may be incarcerated for over a year does not, by itself, justify termination of that parent's rights under subsection (e). Only in cases akin to this one, where the other parent's rights have been terminated or restricted and the [child] is in the custody of DCFS and placed other than in her normal home, can a court rely on subsection (e) to find that a parent's incarceration renders him unfit. And in reality, it is the child's deprivation of

a normal home for a period of more than a year that renders the incarcerated parent unfit, not the incarceration itself.

*Id.* ¶ 11 (footnote omitted).

¶10    The facts of the present case cannot be distinguished from the facts of *In re D.B.*, and like *In re D.B.*, this case does not present the situation described in the footnote. The children were removed from Mother's custody for the third time in August 2016, were placed in DCFS custody, and have been residing in a foster home since September 2016. The State has successfully petitioned to terminate Mother's parental rights. After removal, the children did not simply continue to reside with relatives in their normal home, and they will not return to the home from which they were removed. The children will be deprived of their normal home under circumstances similar to those that supported the findings of parental unfitness and neglect in *In re D.B.*

¶11    Father also challenges the best interest determination. Father supports the position of Mother that an award of permanent custody and guardianship to a maternal relative would preserve the bond to Mother and keep the children safe. Like the determination of unfitness, the best interest determination "should be afforded a high degree of deference." *In re B.R.*, 2007 UT 82, ¶ 12, 171 P.3d 435. The juvenile court found that the children were bonded to the foster parents, who were willing to adopt them and provide them with safety and protection from neglect. The juvenile court's best interest determination is supported by sufficient evidence.

¶12    Because "a foundation for the court's decision exists in the evidence," *see id.*, we affirm.

———